UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINA HAEGELE,

    Plaintiff,

v.                           Case No. 8:19-cv-2750-T-33CPT

GRADY JUDD, et al.,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Sheriff Grady Judd's Motion to Dismiss Amended Complaint (Doc. # 30) and Defendants Reginald Green and Joseph Hicks' Motion to Dismiss Amended Complaint (Doc. # 31), both filed on January 27, 2020. Plaintiff Christina Haegele, individually and as personal representative of the estate of Chance Haegele, responded on February 10, 2020. (Doc. ## 35-36). Defendants replied on February 25, 2020. (Doc. ## 39, 41). For the reasons that follow, the Motions are granted in part and denied in part.

**I. Background**

This is a Section 1983 and wrongful death case filed by Christina Haegele, as personal representative of the estate of her deceased son, Chance Haegele, who was shot and killed

1

by two Polk County Sheriff deputies near his home on March 20, 2018. (Doc. # 22). Chance, who was twenty years old and lived with his mother at the time of the shooting, suffered from serious health issues caused by type I diabetes. (Id. at 3). He also suffered from "bipolar disorder, psychosis, schizophrenia, ADHD, anxiety, paranoia, alcohol abuse and adjustment disorder, cannabis abuse, and severe depression." (Id.).

Haegele alleges that Chance's physical and mental health issues were well-known to Sheriff Judd, who interacted with Chance pursuant to the Baker Act or Marchman Act on at least 11 occasions before the March 20, 2018 incident. (Id. at 4). Haegele further alleges that, although Chance experienced suicidal ideations and thus potentially posed a threat of harm to himself, he was never found to be a threat to others. (Id.). According to Haegele, Defendants had ample notice that Chance (i) was suffering from mental health issues, (ii) had no history of violent or aggressive behavior toward law enforcement, and (iii) had no criminal history. (Id.).

On March 20, 2018, Deputies Green and Hicks responded to a call from Chance's mother requesting assistance and seeking to possibly Baker Act Chance. (Id. at 3, 8). The deputies allegedly knew that Chance had an unloaded shotgun, and that

he did not have access to ammunition. (Id. at 8-9). Haegele alleges that Green and Hicks found Chance in an area near his home. (Id. at 9). Although Green and Hicks claim that Chance was facing them with the shotgun in his hands, the autopsy report indicates that most shots entered Chance through his back. (Id. at 10). This means he would have been facing away from the deputies when they shot him. (Id.). According to the autopsy report, of the seventeen shots fired at Chance, nine hit him, and only one of those nine entered through the front of his body. (Id. at 10-11).

Haegele alleges that, in statements to the media, Sheriff Judd spun the wrongful acts of the deputies in a manner that was inconsistent with the physical evidence and riddled with inaccuracies. (Id. at 13).

Haegele cites Sheriff Judd's past statements in an effort to demonstrate a culture of excessive force. (Id.). For example, Sheriff Judd has stated that his office does not choose to shoot people, but "if you choose for us to shoot at you, we're gonna shoot at you . . . a lot," and "shoot them . . . shoot them a lot until the threat's neutralized." (Id.). Haegele alleges that Sheriff Judd's comments "have created a culture" within the Sheriff's Office where "excessive use of force is not only tolerated, it is celebrated." (Id. at 14).

3

She further alleges that the Sheriff's Office failed to conduct a sufficient investigation of the shooting in order to protect Hicks and Green. (Id. at 12-13).

In her amended complaint, Haegele sues Sheriff Judd in his official capacity as the Sheriff of Polk County and the individual deputies, Green and Hicks, for thirteen causes of action: wrongful death against Sheriff Judd (Count I); wrongful death against the deputies (Count II); wrongful death (manslaughter [Florida Statute] Section 782.07) against Sheriff Judd (Count III); wrongful death (manslaughter Section 782.07) against the deputies (Count IV); Fourth Amendment excessive force in violation of Section 1983 against Sheriff Judd (Count V); Fourth Amendment excessive force in violation of Section 1983 against the deputies (Count VI); Fourteenth Amendment substantive due process claim against Sheriff Judd (Count VII); Fourteenth Amendment substantive due process claim against the deputies (Count VIII); negligent hiring against Sheriff Judd (Count IX); negligent retention against Sheriff Judd (Count X); negligent training against Sheriff Judd (Count XI); negligent supervision against Sheriff Judd (Count XII); and negligence against Sheriff Judd (Count XIII). (Id. at 14-30).

Sheriff Judd, Green, and Hicks now seek dismissal of the amended complaint. (Doc. ## 30, 31). Haegele has responded (Doc. ## 35, 36), and Sheriff Judd and the deputies have replied. (Doc. ## 39, 41). The Motions are ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its

consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

**III. Analysis**

 **A. Agreed Dismissal of Certain Counts**

 In her responses, Haegele "withdraws" seven counts: Counts VII-XIII. (Doc. # 35 at 18; Doc. # 36 at 5). Accordingly, the Court dismisses Counts VII, VIII, IX, X, XI, XII, and XIII.

 **B. Shotgun Complaint**

 Green and Hicks argue that the amended complaint is a shotgun pleading because the remaining claims against them — Counts II, IV, and VI — lump them together. (Doc. # 31 at 4). The Eleventh Circuit has identified four categories of shotgun complaints, including those that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322-23 (11th Cir. 2015). The amended complaint falls squarely into this category.

Because the remaining counts against Hicks and Green impermissibly lump them together and fail to allege separately what each deputy supposedly did, these counts must be dismissed. Rather than dismiss the entire amended complaint, the Court dismisses Counts II, IV, and VI with leave to amend the pleading defect.

**C.  Wrongful Death Claims Against Sheriff Judd**

Because Haegele concedes that she may only pursue wrongful death claims in her capacity as personal representative of her son's estate, (Doc. # 35 at 10; Doc. # 36 at 4), the remaining wrongful death claims, Counts I and III against Sheriff Judd, are dismissed to the extent Haegele asserts them in her personal capacity.

Additionally, the Court agrees with Sheriff Judd that Count III — a claim premised on violation of the criminal manslaughter statute — must be dismissed. Haegele has not cited any authority establishing that the criminal manslaughter statute — Florida Statute § 782.07 — creates a private right of action separate from a traditional wrongful death claim. Where, as here, "a criminal remedy is available, and no civil remedy is assigned, it is not assumed that a civil remedy exists." Morrison v. Morgan Stanley Props., No. 06-80751CIV, 2007 WL 2316495, at *10 (S.D. Fla. Aug. 9, 2007);

7

see also Featherstone v. AT&T, No. 3:17CV837-MCR-HTC, 2019 WL 5460198, at *3 (N.D. Fla. Sept. 24, 2019)("[T]he criminal statutes referenced in Count 2 do not provide Plaintiff with a private cause of action. Chapter 784 of the Florida Statutes encompasses criminal statutes related to assault, battery and culpable negligence, Chapter 817 identifies crimes related to fraudulent practices and Chapter 836 identifies crimes related to defamation, libel, threatening letters and similar offenses. Criminal statutes, however, do not generally create an independent cause of action for damages. Because these criminal statutes do not provide a private right of action under Florida law, Count 2 should be dismissed." (citations omitted)), adopted by, No. 3:17CV837-MCR-HTC, 2019 WL 5457997 (N.D. Fla. Oct. 24, 2019).

Haegele mistakenly contends that Section 95.11(10), Fla. Stat., creates an independent civil cause of action for violation of criminal manslaughter or murder statutes. That provision says nothing about private rights of action. Instead, it "extend[s] the statute of limitations for wrongful death claims based on the criminal acts of murder or manslaughter." Pinares v. United Techs. Corp., No. 10-80883-CIV, 2018 WL 10502426, at *6 (S.D. Fla. Nov. 14, 2018); see Fla. Stat. § 95.11(10)("Notwithstanding paragraph (4)(d), an

8

action for wrongful death seeking damages authorized under s. 768.21 brought against a natural person for an intentional tort resulting in death from acts described in s. 782.04 or s. 782.07 may be commenced at any time. This subsection shall not be construed to require an arrest, the filing of formal criminal charges, or a conviction for a violation of s. 782.04 or s. 782.07 as a condition for filing a civil action.").

Because Section 95.11(10) does not create a private right of action derived from the manslaughter statute that is separate from a traditional wrongful death claim, Haegele may assert only one wrongful death claim against each Defendant and Count III must be dismissed. As the Court has dismissed Count III, Sheriff Judd's alternate motion to strike this count as duplicative of the other wrongful death claim, Count I, is denied as moot. (Doc. # 30 at 14; Doc. # 31 at 15).

Haegele has, however, adequately alleged her traditional wrongful death claim against Sheriff Judd (Count I). Sheriff Judd argues that this count is "inconsistent" because (i) it alleges he acted "intentionally, recklessly, or negligently," and (ii) it alleges that the deputies "were acting within the scope of their employment," while Count II against the deputies alleges that the deputies "were acting outside the scope of their employment." (Doc. # 30 at 4-6; Doc. # 31 at

9

5-6). But "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1273 (11th Cir. 2009). Count I is explicitly pled in the alternative and permissibly alleges that Defendants caused Chance's death "intentionally, recklessly, or negligently." (Doc. # 22 at 14-15).

Thus, Haegele has at least stated a claim that Sheriff Judd is liable for wrongful death based on the deputies' negligent or reckless conduct. Accordingly, the Court will not dismiss Count I against Sheriff Judd as inconsistent. Nor will the Court find that Sheriff Judd is immune from suit based on the deputies' acting outside the course and scope of their employment.

### D. Section 1983 against Sheriff Judd

In Count V, Haegele alleges that Sheriff Judd "is an official with final policymaking authority and is responsible for hiring, training, and supervising [his] law enforcement officers and, when necessary, for investigating alleged wrongdoing by employees and imposing discipline and/or taking other corrective action." (Doc. # 22 at 17-18). Sheriff Judd allegedly "not only failed to investigate the wrongdoing of its employees/agents but covered up their unconstitutional

10

actions." (Id. at 18). He "failed to implement adequate procedures to investigate constitutional violations by its officers and to impose discipline on its officers when they engage in constitutional violations." (Id. at 17). Additionally, the amended complaint alleges Sheriff Judd "had a custom and practice of unconstitutional practices by its employees/agents using excessive force against persons like" Chance. (Id. at 18). Finally, Sheriff Judd allegedly "after notice of the constitutional violations alleged herein, officially sanctioned and/or ratified these actions and refused to discipline its officers, employees and agents, which sanction and/or ratification established a policy, by a final policymaker, that directly or indirectly resulted in the violation of [Chance's] constitutional rights." (Id.).

Only two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980).

According to the Supreme Court's holding in Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), municipalities are "persons" subject to Section 1983

liability. However, municipalities may be held liable only where "action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691. Municipalities cannot be held liable for employees' conduct under a theory of respondeat superior. Samples v. City of Atlanta, 846 F.2d 1328, 1333 (11th Cir. 1988); see also Monell, 436 U.S. at 691.

To state a Monell claim, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). Locating a "policy" ensures that the governmental entity is only held liable for those constitutional deprivations resulting from its decision-makers or of those officials whose acts may fairly be said to be those of the entity. Bd. of Cty. Comm'rs of Bryan Cty. v.

Brown, 520 U.S. 397, 403-04 (1997)(citing Monell, 436 U.S. at 694).

However, "[b]ecause a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is the moving force behind the constitutional violation." Grech v. Clayton County, 335 F.3d 1326, 1330 (11th Cir. 2003)(alterations and internal quotation marks omitted). "A custom is a practice that is so settled and permanent that it takes on the force of law." Sewell, 117 F.3d at 489. To establish the existence of a custom, the plaintiff must show a "longstanding and widespread practice." Craig v. Floyd County, 643 F.3d 1306, 1310 (11th Cir. 2011)(quotation marks omitted). Thus, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." Id. at 1311.

In addition, because municipalities cannot be held liable under respondeat superior, there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (citing

City of Canton v. Harris*,* 489 U.S. 378, 385 (1989)). The Supreme Court has explained that the custom or policy must be the "moving force" behind the constitutional deprivation for there to be sufficient causation. Monell*,* 436 U.S. at 694.

Here, the amended complaint plausibly pleads a constitutional violation: that Hicks and Green used excessive force on Chance Haegele in violation of his Fourth Amendment rights by shooting him in the back multiple times. Therefore, the issue is whether Haegele has sufficiently alleged a custom or policy perpetuated by Sheriff Judd.

First, Haegele attempts to proceed under the theory that Sheriff Judd maintained a custom or policy of excessive force, which caused the shooting death of Chance. (Doc. # 22 at 18). In support, Haegele relies on Sheriff Judd's frequent comments to the media made after various shootings, which fostered a culture of celebrating excessive force within the Sheriff's Office. In reply, Sheriff Judd highlights that Haegele has not presented evidence about other prior incidents of excessive force by other deputies and suggests that such failure precludes a finding of a policy or custom. (Doc. # 41 at 5-6).

While Sheriff Judd's point is well taken, his argument is more appropriate at the summary judgment stage after

Haegele has had the opportunity for discovery. See Holder v. Gualtieri, No. 8:14-cv-3052-T-33JSS, 2015 WL 4079844, at *4 (M.D. Fla. July 6, 2015)("As the existence of such a custom is largely a fact-based issue, the Sheriff's arguments would be better suited at the summary judgment stage when Holder has been afforded additional discovery.").

Viewing the allegations in the light most favorable to Haegele, Haegele has sufficiently pled the existence of a policy or custom of excessive force within the Sheriff's Office. Cf. Buckley v. Barbour Cty., Ala., 624 F. Supp. 2d 1335, 1343–44 (M.D. Ala. 2008)("But even if a policy or custom which is not unconstitutional on its face requires 'considerably more proof than the single incident' to infer a policy or custom, the County's argument is more appropriate at the summary judgment stage. The allegations blaming the County's wider practice or custom to forego training, thus, amount to more than speculation, and the [Section] 1983 claim against the County will survive a motion to dismiss."). Thus, Sheriff Judd's Motion is denied as to Count V.

### E. Motions to Strike

Embedded at the end of each motion to dismiss, Defendants additionally seek to strike the wrongful death claims brought under the manslaughter statute, as well as Haegele's claims

15

for equitable and injunctive relief, special damages, and punitive damages. (Doc. # 30 at 14-16; Doc. # 31 at 15-17).

Again, the Court has already dismissed the wrongful death claims allegedly brought under the criminal manslaughter statute. So, the motions to strike are denied as moot on that point.

Regarding the requested damages and other relief, the Court is not persuaded by Defendants' argument, which is devoid of citation to case law. Without the support of relevant authority, the Court will not strike Haegele's requests for equitable or injunctive relief or various types of damages.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Sheriff Grady Judd's Motion to Dismiss Amended Complaint (Doc. # 30) is **GRANTED IN PART AND DENIED IN PART.**

(2) Defendants Reginald Green and Joseph Hicks' Motion to Dismiss Amended Complaint (Doc. # 31) is **GRANTED IN PART AND DENIED IN PART.**

(3) Counts II, III, IV, VI, VII, VIII, IX, X, XI, XII, and XIII are **DISMISSED**. Count I is **DISMISSED** to the extent it was brought by Haegele individually.

(4) Haegele may file a second amended complaint that is consistent with this Order within 14 days.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of April, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE